SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
  A Limited Liability Partnership
  Including Professional Corporations
MARTIN D. KATZ, Cal. Bar No. 110681
mkatz@sheppardmullin.com
BRIDGET J. RUSSELL, Cal. Bar No. 288107
brussell@sheppardmullin.com
1901 Avenue of the Stars, Suite 1600
Los Angeles, California 90067
Telephone:  310.228.3700
Facsimile:  310.228.3701

Attorneys for Petitioners
SPIRIT MUSIC GROUP, INC., LYRIC
CAPITAL MANAGEMENT GROUP LP,
JONATHAN SINGER and ROSS
CAMERON

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JONATHAN SINGER, ET AL, | Case No. 2:22-cv-05212-FMO-AGR |
| Petitioners, | **NOTICE OF MOTION AND MOTION TO STAY ARBITRATION AS TO PETITIONERS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT** |
| v. | |
| ALAN ETT, | |
| Respondent. | |
| | Date:    December 1, 2022 |
| | Time:    10:00 a.m. |
| | Crtrm.:  6D |

## NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE that on December 1, 2022, at 10 a.m., or as soon thereafter as counsel may be heard in the above-entitled Court, located at 350 W. 1st Street, 6th Floor, Courtroom 6D, Los Angeles, CA 90012, in the courtroom of the Honorable Fernando M. Olguin (Courtroom 6D), Petitioners Jonathan Singer, Ross Cameron, Lyric Capital Management Group LP and Spirit Music Group, Inc. ("Petitioners") will and hereby do move the Court for an Order pursuant to 9 U.S.C. § 4: (1) permanently staying (as to them only) the arbitration instituted by Respondent Alan Ett ("Ett" or "Respondent") before the American Arbitration Association, Case 01-21-0017-0579, against them and a subsidiary of Spirit, Spirit Music Collective, LLC ("SMC") (the "Third-Party Arbitration"); and (2) granting such other relief as the Court deems just and proper.

This Motion is brought on the grounds that Petitioners are not parties to any arbitration agreement with Respondent and there are no grounds for otherwise forcing them to arbitrate under the applicable caselaw.

This Motion is made following the conference of counsel pursuant to Central District of California Local Rule 7-3, which took place on October 21, 2022. This motion is based upon this Notice of Motion and Motion, the Memorandum of Points and Authorities, the Declarations of Bridget J. Russell, Jonathan Singer and Ross Cameron, as well as the pleadings and papers on file in this action, and such other oral and/or documentary evidence or argument as may be presented to the Court at or before the time of the hearing.

1  Dated:  October 31, 2022

2                                    SHEPPARD, MULLIN, RICHTER & HAMPTON
3                                    LLP

4

5                                    By        /s/ Bridget J. Russell
6                                            MARTIN D. KATZ
                                            BRIDGET J. RUSSELL
7                                          Attorneys for Petitioners
8                                    SPIRIT MUSIC GROUP, INC., LYRIC
                                     CAPITAL MANAGEMENT GROUP LP,
9                                    JONATHAN SINGER and ROSS CAMERON

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

SMRH:4867-5268-3324.1                NOTICE OF MOTION AND MOTION TO STAY ARBITRATION

# **TABLE OF CONTENTS**

**Page**

I. FACTUAL BACKGROUND .................................................................. 1

    A. Ett Enters Into The APA, The Employment Agreement And The Amendment ............................................................................. 1

    B. Ett Initiates The Third-Party Arbitration ................................. 3

    C. Petitioners Commence This Action, Originally In The Southern District of New York, To Stay The Third-Party Arbitration ............................. 5

    D. Petitioners Filed Their Motion to Stay Arbitration And In Response The Action Is Transferred To The Central District of California ........... 5

II. ARGUMENT .................................................................................. 6

    A. Legal Standard ........................................................................ 6

    B. The Third-Party Arbitration Must Be Stayed As To Petitioners ........... 6

        1. There Is No Legally Cognizable Theory Pursuant To Which Singer or Cameron Can Be Forced To Arbitrate ......................... 8

            a. Agency law does not bind Singer and Cameron to the Arbitration Agreement ......................................................... 9

            b. The third-party beneficiary exception fails ..................... 10

            c. No theory of estoppel is applicable here ......................... 12

        2. There Is No Legally Cognizable Theory Pursuant To Which Lyric or Spirit Can Be Forced To Arbitrate ......................... 14

            a. The third-party beneficiary exception fails ..................... 15

            b. The doctrine of vicarious liability is inapplicable ........... 17

            c. No theory of estoppel is applicable here ......................... 17

            d. Spirit is not a party to the Arbitration Agreement ........... 18

III. CONCLUSION ............................................................................. 18

1

<u>TABLE OF AUTHORITIES</u>

2

Page(s)

3

<u>Cases</u>

4

*A Comedy Club, Inc. v. Improv W. Assocs.*
  553 F.3d 1277 (9th Cir. 2009) ............................................................... 7

5

6

*Abraham Zion Corp. v. Lebow*
  761 F.2d 93 (2d Cir. 1985) ......................................................... 12, 17

7

8

*All. Masonry Corp. & Corning Hosp.*
  178 A.D.3d 1346 (2019) ............................................................... 8

9

*All Metro Health Care Servs., Inc. v. Edwards*
  25 Misc. 3d 863, 884 N.Y.S.2d 648 (Sup. Ct. 2009) ........................ 8

10

11

*Belzberg v. Verus Invs. Holdings Inc.*
  21 N.Y.3d 626, 999 N.E.2d 1130 (2013) ...................................... 13

12

13

*Benaroya v. Willis*
  23 Cal. App. 5th 462 (2018) ....................................................... 7

14

15

*Benasra v. Marciano*
  92 Cal. App. 4th 987 (2001) ............................................. 10, 12, 17

16

17

*Boroditskiy v. European Specialties LLC*
  314 F.Supp.3d 487 (S.D.N.Y. 2018) ......................................... 6, 7

18

19

*Boucher v. All. Title Co.*
  127 Cal. App. 4th 262 (2005) .................................................. 13

20

21

*Cohen v. TNP 2008 Participating Notes Program, LLC* (2019)
  31 Cal. App. 5th 840 ........................................................... 9, 17

22

23

*Comer v. Micor, Inc.*
  436 F.3d 1098 (9th Cir. 2006) .......................................... 7, 12, 17

24

25

*County of Contra Costa v. Kaiser Foundation Health Plan, Inc.* (1996)
  47 Cal.App.4th 237 ............................................................... 8

26

27

*Crowley Mar. Corp. v. Bos. Old Colony Ins. Co.*
  158 Cal. App. 4th 1061 (2008) ........................................... 13, 14

28

-ii-

*Fuentes v. TMCSF, Inc.*
26 Cal. App. 5th 541 (2018) ................................................................ 11

*Gulf Underwriters Ins. Co. v Verizon Communications, Inc.*
32 AD3d 709 (1st Dept 2006) ................................................................ 7

*Hoffman v. Finger Lakes Instrumentation, LLC*
7 Misc. 3d 179, 789 N.Y.S.2d 410 (Sup. Ct. 2005) .......................... 13

*Jensen v. U-Haul Co. of California*
18 Cal. App. 5th 295 (2017) ................................................................ 10

*KPMG LLP v. Kirschner*
182 A.D.3d 484, 122 N.Y.S.3d 18 ........................................................ 7

*Kramer Levin Naftalis & Frankel LLP v. Cornell*
148 A.D.3d 430, 48 N.Y.S.3d 658 (2017) ........................................ 13, 17

*LaSalle Nat. Bank v. Ernst & Young LLP*
285 A.D.2d 101, 729 N.Y.S.2d 671 (2001) .................................... 10, 11

*MAG Portfolio Consultant, GMBH v. Merlin Biomed Group LLC*
268 F.3d 58 (2d Cir.2001) .................................................................. 13

*Matthau v. Superior Ct.*
151 Cal. App. 4th 593 (2007) ................................................................ 6

*Merrill Lynch Inv. Managers v. Optibase, Ltd.*
337 F.3d 125 (2d Cir. 2003) ............................................................. 7, 9

*Oxbow Calcining USA Inc. v. Am. Indus. Partners*
96 A.D.3d 646 (2012) ............................................................................ 8

*Pagarigan v. Libby Care Center, Inc.*
99 Cal.App.4th 298 (2002) .................................................................... 6

*Pillar Project AG v. Payward Ventures, Inc.*
64 Cal. App. 5th 671 (2021) ................................................................ 10

*Rajagopalan v. NoteWorld, LLC*
718 F.3d 844 (9th Cir. 2013) ................................................................ 8

*Ronay Fam. Ltd. P'ship v. Tweed*
216 Cal. App. 4th 830 (2013) ......................................................... 11, 15

-iii-

*Smith/Enron Cogeneration Ltd. P'ship, Inc. v. Smith Cogeneration Int'l, Inc.*
    198 F.3d 88 (2d Cir. 1999) ...................................................................... 8

*Soto v. Am. Honda Motor Co.*
    946 F. Supp. 2d 949 (N.D. Cal. 2012)...................................................... 7

*Suh v. Superior Court* (2010)
    181 Cal. App. 4th 1504 (2010)...................................................... 8, 9, 17

*Thomson-CSF, S.A. v. Am. Arbitration Ass'n*
    64 F.3d 773 (2d Cir. 1995) .................................................................... 13

*Tracer Rsch. Corp. v. Nat'l Env't Servs. Co.*
    42 F.3d 1292 (9th Cir. 1994) ................................................................... 6

*Trina Solar US, Inc. v. Jasmin Solar Pty Ltd.*
    954 F.3d 567 (2d Cir. 2020) ............................................................. 9, 17

*Veera v. Janssen*
    2005 WL 1606054 (S.D.N.Y. July 5, 2005)............................................ 6

*Warner v. U.S. Sec. & Futures Corp.*
    257 A.D.2d 545, 685 N.Y.S.2d 25 (1999)........................................ 11, 15

*World Bus. Ctr., Inc. v. Euro-Am. Lodging Corp.*
    309 A.D.2d 166, 764 N.Y.S.2d 27 (2003)............................................... 9

Statutes

9 U.S.Code § 1 *et seq.*...................................................................... 1, 2, 3, 5

## MEMORANDUM OF POINTS AND AUTHORITIES

Petitioners Jonathan Singer ("Singer"), Ross Cameron ("Cameron"), Lyric Capital Management Group LP ("Lyric") and Spirit Capital Music Group, Inc. ("Spirit") (collectively, "Petitioners"), respectfully submit this Memorandum of Law in support of their Motion pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*, for an order permanently staying (as to them only) the arbitration instituted by Respondent Alan Ett ("Ett" or "Respondent") before the American Arbitration Association (the "AAA"), Case 01-21-0017-0579, against them and a subsidiary of Spirit, Spirit Music Collective, LLC ("SMC") (the "Third-Party Arbitration").

The Third-Party Arbitration should be permanently stayed as to Petitioners pursuant to 9 U.S.C. § 4 because they are not parties to the arbitration agreement (the "Arbitration Agreement") in Ett's employment agreement with SMC (the "Employment Agreement"), which calls for an arbitration before the AAA in Los Angeles, California. Petitioners, have not otherwise agreed to arbitrate any dispute with Ett before the AAA or otherwise, let alone in Los Angeles, California. Nor are there any grounds for binding Petitioners to the Arbitration Agreement under the applicable caselaw.

## I.     FACTUAL BACKGROUND

### A.     Ett Enters Into The APA, The Employment Agreement And The Amendment

On January 1, 2017, Ett and his former companies (the "Selling Companies") entered into an Asset Purchase Agreement ("APA") with SMC, Spirit TMC S.A.R.L. and Spirit Catalogue Holdings S.A.R.L. (collectively, the "Purchasers"). *See Declaration of Jonathan Singer* ("Singer Decl."), ¶ 2 and Exh. 1. Pursuant thereto, Purchasers purchased, among other things, the Publishing Assets of the Selling Companies, 75% of Ett's Writer's Performance Income Share with respect to musical compositions existing as of January 1, 2017 and 50% of Ett's Writer's Performance Income Share with respect to musical compositions created after January 1, 2017 and

during the term of Ett's employment (as these terms are defined in the APA).  APA, § 2.1(a).  The APA does not contain an arbitration agreement.  Rather, the parties agreed that "any action brought hereunder shall be brought in the Federal or state courts located in the County of New York, State of New York," and waived any objection based on jurisdiction or venue.  APA, § 11.9.

Concurrently with Ett, the Selling Companies and Purchasers entering into the APA, Ett entered into the Employment Agreement with SMC.  Pursuant to the Employment Agreement, Ett was employed as SMC's Chief Executive Officer for an initial period of three years.  *Declaration of Bridget Russell* ("Russell Decl."), Exh. 1, Exh. A at §§ 1 and 2.  Section 7 of the Employment Agreement contains various provisions relating to the treatment of intellectual property relating to Ett's sale of the Selling Companies to Purchasers pursuant to the APA (and a variety of other provisions related thereto).  *Id.*, § 7.  The Employment Agreement also contains the Arbitration Agreement pursuant to which Ett instituted the Third-Party Arbitration against SMC, in which Ett also erroneously included Petitioners as parties.  The Arbitration Agreement expressly carves out claims falling under Section 7 of the Employment Agreement:

> ARBITRATION.  ***EXCEPT AS RELATES TO SECTION 7 OF THIS AGREEMENT,*** THE PARTIES AGREE THAT ANY CONTROVERSY, CLAIM OR DISPUTE ARISING OUT OF OR RELATING TO THIS AGREEMENT, OR THE BREACH THEREOF OR ARISING OUT OF OR RELATING TO THE EMPLOYMENT OF THE EXECUTIVE, OR THE TERMINATION THEREOF, INCLUDING ANY STATUTORY OR COMMON LAW CLAIMS UNDER FEDERAL, STATE, OR LOCAL LAW, INCLUDING ALL LAWS PROHIBITING DISCRIMINATION IN THE WORKPLACE, SHALL BE RESOLVED BY CONFIDENTIAL ARBITRATION PROCEEDINGS CONDUCTED BY  A SINGLE ARBITRATOR IN LOS ANGELES, CALIFORNIA IN ACCORDANCE WITH THE EMPLOYMENT ARBITRATION RULES OF THE AMERICAN ARBITRATION ASSOCIATION. THE PARTIES AGREE THAT ANY AWARD RENDERED BY THE ARBITRATOR SHALL BE FINAL AND BINDING, AND THAT JUDGMENT UPON THE

AWARD MAY BE ENTERED IN ANY COURT HAVING JURISDICTION THEREOF. THE PARTIES FURTHER ACKNOWLEDGE AND AGREE THAT, DUE TO THE NATURE OF THE CONFIDENTIAL INFORMATION, TRADE SECRETS, AND INTELLECTUAL PROPERTY BELONGING TO THE COMPANY GROUP TO WHICH THE EXECUTIVE HAS OR WILL BE GIVEN ACCESS, AND THE LIKELIHOOD OF SIGNIFICANT HARM THAT THE COMPANY GROUP WOULD SUFFER IN THE EVENT THAT SUCH INFORMATION WAS DISCLOSED TO THIRD PARTIES, NOTHING IN THIS SECTION SHALL PRECLUDE THE COMPANY FROM GOING TO COURT TO SEEK INJUNCTIVE RELIEF TO PREVENT EXECUTIVE FROM VIOLATING THE OBLIGATIONS ESTABLISHED IN SECTION 7 OF THIS AGREEMENT. EACH PARTY SHALL PAY THEIR RESPECTIVE COSTS IN CONNECTION WITH SUCH ARBITRATION, AND AS REQUIRED BY CALIFORNIA LAW, THE COMPANY SHALL PAY THE COST OF THE ARBITRATOR.

*Id*., § 8(g) (emphasis added). The Employment Agreement was executed by Ett and SMC.

On October 28, 2019, Ett and SMC entered into an amendment to the Employment Agreement (the "Amendment"), whereby Ett's Employment was extended by one year, his salary was increased and Ett and SMC agreed to negotiate in good faith regarding the establishment of an Incentive Plan. *See* Russell Decl., Exh. 1, Exh. B. The Amendment was executed by Spirit on SMC's behalf, not as a party to the Employment Agreement (which it is not). Singer Decl., ¶ 5.

### B. Ett Initiates The Third-Party Arbitration

On October 25, 2021, Ett commenced the Third-Party Arbitration against SMC and Petitioners and filed a Demand for Arbitration (the "Demand") seeking damages and other relief in connection with both the APA and the Employment Agreement (including Section 7 thereof). *See* Russell Decl., Exh. 2. Again, the APA is not subject to an arbitration agreement and Petitioners are not parties to the Employment Agreement or the Arbitration Agreement therein. The Demand nonetheless claims

that the AAA has jurisdiction over Petitioners based on a mish-mash of allegations. The purported justifications for Ett's position are set forth in the Demand, as follows:

1)  Ett claims that Singer and Cameron are subject to the jurisdiction of the AAA in Los Angeles and it would be equitable to compel them to arbitrate Ett's claims against them because: (a) Singer and Cameron are agents/executives of SMC that benefited professionally and financially from the business relationship established with Ett through the Employment Agreement and Amendment such that they are third-party beneficiaries of those agreements; and (b) the signatories of the Employment Agreement and Arbitration Agreement had implied authority to bind Singer and Cameron to the Arbitration Agreement. Demand ¶ 18.

2)  Ett claims that Lyric is subject to the jurisdiction of the AAA in Los Angeles and it would be equitable to compel Lyric to arbitrate Ett's claims against it because: (a) Lyric is vicariously liable for the actions of SMC, Spirit and Singer; (b) Lyric is a third-party beneficiary of the Employment Agreement because it is the ultimate parent of SMC and Spirit and benefited financially from the business relationship established with Ett through the Employment Agreement and the Amendment; and (c) SMC is the agent of Lyric. *Id.* at ¶¶ 16 and 164.

3)  Ett claims that Spirit is subject to the jurisdiction of the AAA because it is allegedly a party to the Employment Agreement (even though it is not). *Id.* at ¶ 15.

On or about November 19, 2021, Petitioners received a letter from AAA initiating the Third-Party Arbitration, and, on or about December 6, 2021, Petitioners' filed an Objection to the jurisdiction of the AAA over Petitioners, on the ground that they are not parties to the Arbitration Agreement. *See* Russell Decl., Exhs. 2 and 3. The stay of the Third-Party Arbitration that occurred automatically upon the filing of this proceeding has been extended until a ruling on this Motion to Stay by agreement of the parties. Russell Decl., ¶ 5.

**C.    Petitioners Commence This Action, Originally In The Southern District of New York, To Stay The Third-Party Arbitration**

On December 20, 2021, Petitioners instituted this action, in the Southern District of New York, seeking a permanent stay of the Third-Party Arbitration pursuant to 9 U.S.C. § 4 and a declaration that Petitioners are not parties to the Arbitration Agreement and cannot otherwise be forced to arbitrate Ett's claims against them.  [Dkt. No. 1 (the "Petition").]

On February 2, 2022, Ett answered the Petition, admitting that Respondents are not "express[] signatories of the Employment Agreement," but claiming that they are otherwise "bound by the Arbitration Agreement."  [Dkt. No. 8 (the "Answer") ¶¶ 1, 20.]  The Answer vaguely claims that Petitioners should be compelled to arbitrate based on: (1) the close interrelation of Petitioners with SMC; (2) the purported rendering of SMC potentially insolvent; and (3) the doctrines of estoppel and waiver. Answer at pp. 5-6.  The Answer also includes a jumbled waterfall of allegations as to why each of the Petitioners should be forced to arbitrate Ett's claims against them. *See id.* at p.4.   Specifically, it alleges that: (1) Singer and Cameron should be compelled to arbitrate based on their close personal involvement in Ett's hiring and termination; (2) Singer should be compelled to arbitrate based on his control, supervision and input into overall decisions made by Cameron relating to the Petitioners, including with respect to hiring and firing; (3) Spirit should be compelled to arbitrate because of its control over the accounting and administrative functions of SMC; and (4) Lyric should be compelled to arbitrate because of Singer and Cameron's control of Lyric. *Id.*  The Answer additionally asserts lack of personal jurisdiction and improper venue as affirmative defenses. *Id.* at p.5.

**D.    Petitioners Filed Their Motion to Stay Arbitration And In Response The Action Is Transferred To The Central District of California**

On March 7, 2022, Petitioners filed a Motion to Stay Arbitration as to Petitioners ("Prior Motion to Stay").  On March 21, 2022, Ett filed his Opposition to

NOTICE OF MOTION AND MOTION TO STAY ARBITRATION

the Motion to Stay ("Prior Opposition").  On March 28, 2022, Petitioners filed their Reply in support of the Motion to Stay.  On July 20, 2022, after requesting additional briefing from the parties regarding Ett's improper venue defense, the Southern District of New York issued an order transferring this action to the Central District of California.  On October 18, 2022, this Court denied without prejudice the Prior Motion to Stay, and ordered that Petitioners file any further motion to stay arbitration by October 31, 2022.

## II.    ARGUMENT

### A.    Legal Standard

In deciding a motion to stay arbitration, courts apply a standard similar to that used to evaluate a motion for summary judgment.  *See, e.g., Boroditskiy v. European Specialties LLC*, 314 F.Supp.3d 487, 492 (S.D.N.Y. 2018).  If the moving party has shown facts entitling it to a stay of the pending arbitration, "the party opposing may not rest on a denial but must submit evidentiary facts showing that there is a dispute of fact to be tried."  *Veera v. Janssen*, 2005 WL 1606054, at *3 (S.D.N.Y. July 5, 2005); *see also Pagarigan v. Libby Care Center, Inc.*, 99 Cal.App.4th 298, 301 (2002) (holding that to show a valid arbitration contract exists that is binding on an individual who did not sign it, the party seeking enforcement has the burden of establishing the authority of the person who purportedly signed the agreement as an agent on behalf of the non-signatory party).

### B.    The Third-Party Arbitration Must Be Stayed As To Petitioners

Notwithstanding the federal policy favoring it, "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit."  *Tracer Rsch. Corp. v. Nat'l Env't Servs. Co.*, 42 F.3d 1292, 1294 (9th Cir. 1994) (quoting *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582 (1960)); *Matthau v. Superior Ct.*, 151 Cal. App. 4th 593, 598 (2007) ("The right to arbitration depends on a contract, and a party can be compelled to submit a dispute to arbitration only if the party has agreed in writing

to do so."); *Gulf Underwriters Ins. Co. v Verizon Communications, Inc.*, 32 AD3d 709, 710 (1st Dept 2006) ("A party cannot be forced to an arbitration to which it has not agreed, and any arbitration agreement must reflect a clear and unequivocal manifestation of an intention to arbitrate.");[1]  Here, none of the Petitioners agreed to arbitrate any dispute with Ett.  The only agreement to arbitrate relied upon by Ett is found in his Employment Agreement with SMC, to which none of Petitioners is a party.

The Ninth Circuit Court of Appeals, following the standard set by the Second Circuit, has recognized that *nonsignatories* can only be bound to an arbitration agreement if permitted "under ordinary contract and agency principles."  *Comer v. Micor, Inc.*, 436 F.3d 1098, 1101 (9th Cir. 2006).   These principles are: (1) incorporation by reference; 2) assumption; 3) agency; 4) veil-piercing/alter ego; and 5) estoppel." *Id.* (citing *see also Thomson-CSF, S.A. v. Am. Arbitration Ass'n*, 64 F.3d 773, 776 (2d Cir. 1995)).   Arbitration clauses and contracts "do not bind non-parties in the absence of such *extraordinary* relationships."  *A Comedy Club, Inc. v. Improv W. Assocs.*, 553 F.3d 1277, 1287 (9th Cir. 2009) (emphasis added); *see also Boroditskiy*, 314 F.Supp.3d at 493 (these theories are "narrowly construe[d]").   A party cannot seek to extend these limited circumstances by resort to a "hybrid approach."  *Merrill Lynch Inv. Managers v. Optibase, Ltd.*, 337 F.3d 125, 130 (2d Cir. 2003) (citing *Thomson–CSF*, 64 F.3d at 780).   Rather, it must make a "full showing of some accepted theory under agency or contract law" and cannot combine theories to craft an equitable argument to force non-signatories to arbitrate.  *Id.*

---

[1]    The court "must first decide which parties are bound" by an arbitration agreement.  *Soto v. Am. Honda Motor Co.*, 946 F. Supp. 2d 949, 954 (N.D. Cal. 2012) *See also Boroditskiy v. European Specialties LLC*, 314 F.Supp.3d 487, 493 (S.D.N.Y. 2018) (holding that where a petitioner contends that it is not "bound to [the] arbitration agreement, the issue of arbitrability is for the Court in the first instance."); *KPMG LLP v. Kirschner*, 182 A.D.3d 484, 484-85, 122 N.Y.S.3d 18, 20; *Benaroya v. Willis*, 23 Cal. App. 5th 462, 469-70 (2018).

California and New York caselaw are in accord. *See Suh v. Superior Court* (2010)
181 Cal. App. 4th 1504, 1512 (2010); *County of Contra Costa v. Kaiser Foundation
Health Plan, Inc.* (1996) 47 Cal.App.4th 237, 242; *Matter of Arb. between All.
Masonry Corp. & Corning Hosp.*, 178 A.D.3d 1346, 1347, 115 N.Y.S.3d 556 (2019);
*All Metro Health Care Servs., Inc. v. Edwards*, 25 Misc. 3d 863, 867, 884 N.Y.S.2d
648, 652 (Sup. Ct. 2009).

When the question is "whether a particular party is bound by the arbitration
agreement," the "liberal federal policy regarding the scope of arbitrable issues is
inapposite." *Rajagopalan v. NoteWorld, LLC*, 718 F.3d 844, 847 (9th Cir. 2013)
(*citing Comer*, 436 F.3d 1098, 1104 n. 11 (9th Cir.2006)) *See also County of Contra
Costa*, 47 Cal.App.4th at 245 ("Even the strong public policy in favor of arbitration
does not extend to those who are not parties to an arbitration agreement or who have
not authorized anyone to act for them in executing such an agreement."); *Smith/Enron
Cogeneration Ltd. P'ship, Inc. v. Smith Cogeneration Int'l, Inc.*, 198 F.3d 88, 97 (2d
Cir. 1999) ("Although arbitration is generally favored under the FAA, "a court should
be wary of imposing a contractual obligation to arbitrate on a non-contracting party.");
*see also Oxbow Calcining USA Inc. v. Am. Indus. Partners*, 96 A.D.3d 646, 648
(2012) (where "the parties dispute not the scope of an arbitration clause but whether
an obligation to arbitrate exists," the general presumption in favor of arbitration does
not apply).

### 1. <u>There Is No Legally Cognizable Theory Pursuant To Which Singer or Cameron Can Be Forced To Arbitrate</u>

The Demand claimed that the AAA has jurisdiction over non-signatories Singer
and Cameron using buzz words like "agency" and "third-party beneficiaries."
Demand ¶ 18.  The Answer asserted that Singer and Cameron should be forced to
arbitrate because of their "close interrelation" with SMC, Singer and Cameron's
"control" of Lyric, Singer and Cameron's "close personal involvement" in Ett's hiring
and termination and the doctrine of estoppel.  Answer at pp. 5-6.  The Prior Opposition

-8-

claimed that Singer and Cameron should be forced to arbitrate Ett's claims because they are third-party beneficiaries of Ett's Employment Agreement and agents of SMC. None of these rationales amounts to a cognizable theory for subjecting non-signatories to arbitration.

### a.    Agency law does not bind Singer and Cameron to the Arbitration Agreement

Ett appears to claim that non-signatories should be bound to an arbitration agreement based on the mere existence of an agency relationship.  Even if proven, Ett's vague allegations of "agency," "interrelation," "control" and "implied authority" amount to nothing more than "generalized allegations of affiliation" and are insufficient to force Singer or Cameron to arbitrate.  *See Merrill Lynch Inv. Managers*, 337 F.3d at 130-31; *see also Cohen v. TNP 2008 Participating Notes Program, LLC* (2019) 31 Cal. App. 5th 840, 860-61 (ownership of a signatory alone insufficient to bind a party to arbitration agreement); *Trina Solar US, Inc. v. Jasmin Solar Pty Ltd.,* 954 F.3d 567, 573 (2d Cir. 2020) (same); *World Bus. Ctr., Inc. v. Euro-Am. Lodging Corp.*, 309 A.D.2d 166, 171, 764 N.Y.S.2d 27 (2003) ("interrelatedness" of a signatory and non-signatory is not enough to subject a non-signatory to arbitration; it does not "warrant ignoring the manner in which the various parties or corporate entities to the transaction have chosen to conduct business").

The law is clear that an agency relationship between an employer (the principal) and its officer or employee (the agent) ***does not*** itself bind the officer or employee to an arbitration agreement entered into by the employer.  *See Suh v. Superior Ct.*, 181 Cal. App. 4th 1504, 1513-14 (2010) (holding that the non-signatory plaintiffs' mere status as agents of the signatory to the arbitration agreement was insufficient to bind them to that agreement because "[p]ersons are not normally bound by an agreement entered into by a corporation in which they have an interest or are employees."). Indeed, this rule holds true even for arbitration agreements executed by the agent on

behalf of the principal. *See Benasra*, 92 Cal.App.4th at 991. Again, here, Singer and Cameron *did not* execute the Employment Agreement on behalf of SMC.

The agency doctrine instead applies to bind a non-signatory to an arbitration agreement only when the agent-signatory had "authority to bind" the non-signatory principal. *See Jensen v. U-Haul Co. of California*, 18 Cal. App. 5th 295, 303 (2017) ("It is critical to ask who is seeking to bind whom, and on what basis; the question of whether a principal's acts bind an agent is fundamentally different from the question of whether an agent's acts bind a principal."). Here, SMC did not enter into the Employment Agreement as an agent for Singer or Cameron – which Ett admitted in the Prior Opposition – indeed any claim to the contrary would be facially preposterous. Singer Decl., ¶ 4; *Declaration of Ross Cameron* ("Cameron Decl."), ¶ 2. The purpose of the Employment Agreement was to engage Ett as an executive of SMC, not as an employee of Singer or Cameron; neither of them is even referenced in the Employment Agreement. These basic tenets of agency law are dispositive here.

**b.    The third-party beneficiary exception fails**

The Demand attempted to bolster its ill-conceived and vague agency allegations with an allegation that Singer and Cameron are also third-party beneficiaries of the Employment Agreement. This claim was then repeated in the Prior Opposition. Both attempts to invoke the third-party beneficiary exception fail.

A third-party beneficiary is someone who may enforce a contract because the contract is made ***expressly for his or her benefit***. *See Pillar Project AG v. Payward Ventures, Inc.*, 64 Cal. App. 5th 671, 677 (2021), review denied (Sept. 1, 2021); *LaSalle Nat. Bank v. Ernst & Young LLP*, 285 A.D.2d 101, 108, 729 N.Y.S.2d 671 (2001). The mere fact that a contract results in benefits to a third party does not render that party a "third-party beneficiary." *Pillar Project AG*, 64 Cal. App. 5th at 677; *LaSalle Nat. Bank*, 64 A.D.2d at 108. Instead, the test for determining whether a contract was made for the benefit of a third party is whether an intent to benefit a third party "appear[s] from the terms of the contract." *Pillar Project AG*, 64 Cal. App. 5th

at 677; *LaSalle Nat. Bank*, 64 A.D.2d at 108 (intent must be "apparent from the face of the contract.").

First, Ett misconstrues the doctrine, focusing on whether Singer and Cameron are third-party beneficiaries of Ett's Employment Agreement, rather than the Arbitration Agreement. *See, e.g., Ronay Fam. Ltd. P'ship v. Tweed*, 216 Cal. App. 4th 830, 838 (2013) ("To invoke the third party beneficiary exception, [the non-signatories seeking to compel arbitration] had to show that the arbitration clause of the account agreement was "made expressly for [their] benefit."); *Warner v. U.S. Sec. & Futures Corp.*, 257 A.D.2d 545 at 545-46, 685 N.Y.S.2d 25 at 25-26 (1999) (denying motion to compel arbitration despite "clause stipulating that [defendant] is a third-party beneficiary of the agreement at issue" because that clause did not establish that the defendant was a third-party beneficiary of the arbitration agreement).

Second, Singer and Cameron are not third-party beneficiaries of the Arbitration Agreement. The Arbitration Agreement was entered into solely between the "Parties" – "THE PARTIES AGREE…" – which the Employment Agreement defines in its preamble as referring only to "Executive [Ett] and Company [SMC]." Employment Agreement § 8(g). The Arbitration Agreement does not contain a single reference to Singer or Cameron, or even any class of persons that would include Singer or Cameron. In the Prior Opposition, Ett focused on vague references in Sections 6(f) and 7 of the Employment Agreement to "affiliates" and other broad categories of persons that Ett claims include Singer and Cameron. However, these references, which are unrelated to the Arbitration Agreement, are irrelevant to the inquiry before the Court. *See also Fuentes v. TMCSF, Inc.,* 26 Cal. App. 5th 541, 552 (2018) (benefits conferred on the third-party non-signatories in other provisions of contract did not render them third-party beneficiaries of the agreement to arbitrate)*; Warner*, 257 A.D.2d at 545 ("definition under the introductory clause [] defining the clearing broker as including its 'affiliates' depends too much upon 'implication or subtlety'

for purposes of compelling arbitration with a nonsignatory.").[2]  Nor is there anything on the face of the Employment Agreement that would suggest that SMC and Ett intended for Singer or Cameron (or anyone apart from SMC and Ett) to benefit from the Arbitration Agreement.

Third, even if Singer and Cameron were third-party beneficiaries of the Arbitration Agreement, that would entitle them to enforce the Arbitration Agreement *against Ett*, but it would not bind them to the Arbitration Agreement.  *See Comer v. Micor, Inc.*, 436 F.3d 1098, 1102 (9th Cir. 2006) ("A third party beneficiary might in certain circumstances have the power to sue under a contract; it certainly cannot be bound to a contract it did not sign or otherwise assent to."); *Benasra v. Marciano*, 92 Cal. App. 4th 987, 990-91 (2001) ("It is one thing to permit a nonsignatory to relinquish his right to a jury trial, but quite another to compel him to do so."); *see also Abraham Zion Corp. v. Lebow*, 761 F.2d 93, 103 (2d Cir. 1985).

### c.    No theory of estoppel is applicable here

Ett's Answer alleges estoppel as an affirmative defense, and his Prior Opposition cited various cases that were decided under an estoppel theory.  While Ett's Answer failed to identify what theory of estoppel he intended to invoke – there are two recognized theories of estoppel in this context – or the basis for his estoppel claim, the Prior Opposition appeared to limit Ett's estoppel defense to a "direct benefits" estoppel doctrine.  In any event, neither theory is applicable here.

---

[2]      In any event, Section 7 claims are expressly excluded from the Arbitration Agreement as Ett admitted in the Prior Opposition.  Ett's reference to Section 6(f) is even more puzzling.  Section 6(f) provides that in the event of his termination, Ett will be entitled to severance payments only if he executes a "valid waiver and release (in the form attached hereto as Exhibit B) of all claims against the Company Group and its directors, officers, stockholders, members, employees, investors, successors and assigns…."  However, Ett does not claim to have executed a waiver or release in any form, let alone in the form attached as Exhibit B to the Employment Agreement.  Nor does the Demand reference or otherwise implicate Section 6(f).

The "direct benefits" estoppel theory provides that a non-signatory may be forced to arbitrate where the non-signatory "knowingly exploits" the benefits of an agreement containing an arbitration clause, and receives benefits flowing directly from the agreement. *Thomson-CSF*, 64 F.3d at 778; *see also Crowley Mar. Corp. v. Bos. Old Colony Ins. Co.*, 158 Cal. App. 4th 1061, 1072 (2008); *Belzberg v. Verus Invs. Holdings Inc.*, 21 N.Y.3d 626, 631, 999 N.E.2d 1130, 1134 (2013). However, the benefits must be direct; where the benefits are merely "indirect" the doctrine does not apply. *MAG Portfolio Consultant, GMBH v. Merlin Biomed Group LLC*, 268 F.3d 58, 61 (2d Cir.2001); *see also Crowley Mar. Corp.*, 158 Cal. App. 4th at 1072; *Belzberg*, 21 N.Y.3d at 631. A benefit is indirect where the non-signatory exploits "the contractual relation of the parties, but not the agreement itself." *Kramer Levin Naftalis & Frankel LLP v. Cornell*, 148 A.D.3d 430, 431, 48 N.Y.S.3d 658, 659 (2017).

Here, the only so-called benefit Ett alleges that Singer, Cameron and Lyric have exploited is the "business relationship established with Ett through the Employment Agreement." Demand ¶ 18. However, this type of benefit is the *sin qua non* of an indirect benefit and is insufficient as a matter of law. *See generally Kramer Levin Naftalis & Frankel LLP*, 148 A.D.3d at 431.

Nor can Ett invoke an "equitable" estoppel theory. Under that theory, courts will "estop a signatory from avoiding arbitration with a non-signatory when the issues the non-signatory is seeking to resolve in arbitration are intertwined with the agreement that the estopped party has signed, and the signatory and nonsignatory parties share a close relationship." *MAG Portfolio Consultant*, 268 F.3d 58, 62 (citation and quotation marks omitted); *see also Boucher v. All. Title Co.*, 127 Cal. App. 4th 262, 271 (2005); *Hoffman v. Finger Lakes Instrumentation, LLC*, 7 Misc. 3d 179, 185, 789 N.Y.S.2d 410, 415 (Sup. Ct. 2005). However, this theory does not work in reverse: it "is not applicable … where the signatory to an arbitration clause seeks to enforce it against a nonsignatory." *MAG*, 268 F.3d at 62; *Thomson–CSF,*

*S.A.*, 64 F.3d at 779; *see also Crowley Mar. Corp.*, 158 Cal. App. 4th at 1072.  That
is precisely what Ett would be doing here.[3]

*    *    *    *

In sum, there is no recognized theory that supports Ett's attempt to force Singer,
and Cameron to arbitrate Ett's claims against them.  Ett's various allegations boil
down to one claim – that Singer and Cameron should be forced to arbitrate because
they have a financial interest in SMC or the performance of the business.  However,
that is insufficient to force them to arbitrate.

### 2. There Is No Legally Cognizable Theory Pursuant To Which Lyric or Spirit Can Be Forced To Arbitrate

Ett's rationale for why Lyric an Spirit should be forced to arbitrate has similarly
evolved throughout the case.  In the Demand, Ett alleged that Lyric should be forced
to arbitrate under a vicarious liability theory, because it maintains a "close
relationship" with SMC, because it benefitted financially "from the business
relationship established with Ett through the Employment Agreement and
Amendment" such that it is a third-party beneficiary and because it would be
equitable.  Demand ¶ 18.  The Answer based arbitrability on Singer and Cameron's
"control" of Lyric and the doctrine of estoppel.  Answer at pp. 4-5.  Similarly, with
respect to Spirit, the Demand alleged, without explanation, that Spirit is a party to the
Arbitration Agreement because it is a party to the Employment Agreement.  *See*
Demand ¶ 15.  The Answer then appeared to abandon this claim, admitting that none
of the Petitioners, including Spirit, is an express signatory to the Employment
Agreement.  Answer ¶ 1.  Instead, the Answer alleged that Spirit should be forced to
arbitrate Ett's claims because Spirit "control[s]" the accounting and administrative

---

[3]    For the avoidance of doubt, none of the remaining theories recognized under
the caselaw – incorporation, assumption or alter ego – is applicable either.  Petitioners
reserve the right to address those theories in their reply should Ett invoke them in his
opposition.

functions of SMC and the doctrine of estoppel.  Answer at pp. 4-5.  Finally, in the Prior Opposition, Ett claimed that both Lyric and Spirit should be forced to arbitrate because they are third-party beneficiaries of Ett's Employment Agreement and vicariously liable for SMC's obligations.  Each of these exceptions fails.

### a.  The third-party beneficiary exception fails

First, as detailed above, Ett misstates the rule.  To invoke the third-party beneficiary exception, Ett must show that the Arbitration Agreement itself, not merely the Employment Agreement, was made expressly for the benefit of Lyric and Spirit. *See, e.g., Ronay Fam. Ltd. P'ship*, 216 Cal. App. at 838; *Warner*, 257 A.D.2d at 545-4.

Second, Lyric and Spirit are not third-party beneficiaries of the Arbitration Agreement.  Again, the Arbitration Agreement was entered into solely between the "Parties," and that definition does not include Lyric or Spirit.  Employment Agreement § 8(g).  Nor does the Arbitration Agreement contain a single reference to Lyric or Spirit, or even any class of persons that would include Lyric or Spirit.  Ett's Prior Opposition focused on a provision, which directly follows the Arbitration Agreement in the same sub-section, that he summarized as stating that "the Company Group[4] would suffer harm based on the disclosure of certain confidential information."  (Opp at. p.14.)  That provision – even if it were construed as Ett urged – would be insufficient to render Lyric or Spirit third-party beneficiaries.  *See generally Kwatinetz*, 356 F. Supp. at 350 (holding that where the arbitration agreement was made between the parties, reference in a related-provision to the non-

---

[4]    The definition of "Company Group" does not include Lyric, which is not named in the provision and is neither the parent nor a subsidiary of any of the entities named therein.  *See* Singer Decl. ¶ 4.  Nor would Spirit have fallen within the Company Group definition at the time that the Employment Agreement was executed. *See id.*

signatories did "not [] grant [] jurisdiction to the arbitration over nonsignatories," but rather "refer[ed] to situations where those nonparties consent to arbitrate").

More to the point, that provision, sets forth an *exception* to the Arbitration Agreement. That language provides:

> THE PARTIES FURTHER ACKNOWLEDGE AND AGREE THAT, DUE TO THE NATURE OF THE CONFIDENTIAL INFORMATION, TRADE SECRETS, AND INTELLECTUAL PROPERTY BELONGING TO **THE COMPANY GROUP** TO WHICH THE EXECUTIVE HAS OR WILL BE GIVEN ACCESS, AND THE LIKELIHOOD OF SIGNIFICANT HARM THAT **THE COMPANY GROUP** WOULD SUFFER IN THE EVENT THAT SUCH INFORMATION WAS DISCLOSED TO THIRD PARTIES, **NOTHING IN THIS SECTION SHALL PRECLUDE THE COMPANY FROM GOING TO COURT TO SEEK INJUNCTIVE RELIEF** TO PREVENT EXECUTIVE FROM VIOLATING THE OBLIGATIONS ESTABLISHED IN SECTION 7 OF THIS AGREEMENT.

Employment Agreement § 8(g) (emphasis added). Thus, even if the non-signatories in the "Company Group" were third-party beneficiaries of this portion of the Employment Agreement, they would simply have been given the *right to go to court* to seek injunctive relief to protect their confidential information.[5]

Finally, as detailed above, even if Lyric and Spirit were third-party beneficiaries of the Arbitration Agreement, that would entitle them to enforce the Arbitration Agreement against Ett, but it would not bind them to the Arbitration

---

[5]    Ett also relied on other vague alleged references to Lyric and Spirit in the Employment Agreement that are, as detailed above, even further from the mark. The purported references in Section 7 are irrelevant because claims related to Section 7 are excluded from the Arbitration Agreement, as Ett has admitted. The purported references in Section 6(f) are irrelevant because Ett never executed a waiver or release in any form, let alone in the form attached as Exhibit B to the Employment Agreement, and the Demand does not implicate Section 6(f).

1  Agreement.  *See Comer*, 436 F.3d at 1102; *Benasra*, 92 Cal. App. 4th at 990-91; *see*
2  *also Abraham Zion Corp.*, 761 F.2d at 103.

**b.  The doctrine of vicarious liability is inapplicable**

4  In the Demand, Ett asserted vicarious liability only as to Lyric (not Spirit).
5  Demand ¶¶ 160-69.  But, even as to Lyric, Petitioners are unaware of a single case
6  that stands for the proposition that the doctrine of vicarious liability can be invoked
7  to force a non-signatory to arbitrate claims brought by a signatory to an arbitration
8  agreement.  In any event, with respect to their alleged "control" over SMC, mere
9  control or ownership of a signatory alone is insufficient to compel a non-signatory to
10 arbitrate under any cognizable legal theory.  *See, e.g.*, *Suh*, 181 Cal. App. 4th at 1513;
11 *Cohen v. TNP 2008 Participating Notes Program, LLC* (2019) 31 Cal. App. 5th 840,
12 860-61 (ownership of a signatory alone insufficient to bind a party to arbitration
13 agreement); *Trina Solar US, Inc. v. Jasmin Solar Pty Ltd.,* 954 F.3d 567, 573 (2d Cir.
14 2020) (same); *Kramer Levin Naftalis & Frankel LLP*, 148 A.D.3d at 431.

**c.  No theory of estoppel is applicable here**

16 While it is unclear if Ett intends to rely on a theory of estoppel based on Ett's
17 contradictory and vague allegations, neither theory is applicable here for the same
18 reasons as detailed above with respect to Singer and Cameron.

19 As to the "direct benefits" estoppel theory, here, the only so-called benefit Ett
20 alleges that Lyric and Spirit have exploited is the "business relationship established
21 with Ett through the Employment Agreement."  Demand ¶ 16.  However, this type of
22 benefit is the *sin qua non* of an indirect benefit and is insufficient as a matter of law.
23 *See generally Kramer Levin Naftalis & Frankel LLP*, 148 A.D.3d at 431.

24 Nor can Ett invoke an "equitable" estoppel theory because it "is not applicable
25 … where the signatory to an arbitration clause seeks to enforce it against a
26 nonsignatory."  *MAG*, 268 F.3d at 62; *Thomson–CSF,* 64 F.3d at 779; *see also*
27 *Crowley Mar. Corp.*, 158 Cal. App. 4th at 1072.  That is precisely what Ett would be
28 doing here.

1          **d.       Spirit is not a party to the Arbitration Agreement**

2          Again, while Ett appears to have abandoned this theory, for the avoidance of

3  doubt, Spirit is not a party to the Employment Agreement.   Spirit did execute the

4  Amendment, but it did so as SMC's agent.  Singer Decl., ¶ 5.  Under a well-settled

5  principle of agency law, an agent who signs a contract on behalf of a known principal

6  cannot be held to have made a commitment in his or her individual capacity.  *Legacy*

7  *Carbon LLC v. Potter*, 2017 WL 3710787, at *6 (D. Haw. Aug. 28, 2017).  This

8  principle has been consistently applied in the context of arbitration.  *Id.*; *see also*

9  *Benasra v. Marciano,* 92 Cal. App. 4th 987, 991 (2001); *Mionis v. Bank Julius Baer*

10 *& Co.*, 301 AD2d 104, 110 (1st Dept. 2002); *Arhontisa Maritime Ltd. v. Twinbrook*

11 *Corp.*, 2001 WL 1142136, at *4 (S.D.N.Y. Sept. 27, 2001).  And it applies irrespective

12 of whether the signature line includes verbiage such as "as the agent of."  *D.P.*

13 *Promotions, Ltd. v. SelecTV of Am., Ltd.*, 99 A.D.2d 717, 717, 472 N.Y.S.2d 323

14 (1984).  Thus, Spirit's execution of the Amendment on behalf of SMC is insufficient

15 to bind Spirit to the Arbitration Agreement in the Employment Agreement.

16                            *      *      *      *

17         In sum, there is no recognized theory that supports Ett's attempt to force Lyric

18 and Spirit to arbitrate Ett's claims against them.  Ett's various allegations boil down

19 to the same single claim – that Lyric and Spirit should be forced to arbitrate because

20 they have a financial interest in SMC or the performance of the business.  However,

21 that is insufficient to force them to arbitrate.[6]

22 **III.    CONCLUSION**

23         For the reasons set forth herein, Petitioners respectfully request that the Court

24 grant Petitioners' Motion to permanently stay the Third-Party Arbitration commenced

25

26 _____

27 [6]       Because Ett's allegations are both contradictory and vague, should Ett attempt
28 to invoke any additional theories in his opposition, Petitioners reserve the right to
   address them in their reply.

1   by Ett as to Petitioners, and for such other and further relief as the Court may deem

2   just and proper.

3

4   Dated:  October 31, 2022

5                                              SHEPPARD, MULLIN, RICHTER & HAMPTON
                                               LLP
6

7

8                          By   _____
                                        */s/ Bridget J. Russell*
9                                       MARTIN D. KATZ
                                        BRIDGET J. RUSSELL
10                                      Attorneys for Petitioners
                                   SPIRIT MUSIC GROUP, INC., LYRIC
11                                 CAPITAL MANAGEMENT GROUP LP,
12                                JONATHAN SINGER and ROSS CAMERON

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28